## Case No. 4,270.

### The E. C. SCRANTON.

[2 Ben. 25.] [1]

District Court, S. D. New York. Nov., 1867.

Beebe, Dean & Donohue, for libellant.
Isaiah T. Williams, for the E. C. Scranton.
Daniel D. Lord, for the Emerald Isle.

BLATCHFORD, District Judge. This is a libel in rem, filed by John Collins, Jr.,

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

as charterer and pro tanto owner of the steamboat John Hart, against the ship E. C. Scranton and the ship Emerald Isle, to recover damages for a collision which occurred on the 15th of September, 1855. The John Hart was lying on that day, about half-past two o'clock in the afternoon, at her proper berth on the east side of pier No. 35, East river, New York, preparatory to leaving, at a quarter past three o'clock the same afternoon, for Norwalk, in Connecticut, between which place and New York she regularly plied. While she was in this position, the ship E. C. Scranton was seen coming up along the piers from the westward, in tow of a steam-tug, the tug being lashed to the starboard side of the E. C. Scranton. The tide was running strongly ebb, it having been high water that day at eleven o'clock, a. m., at the Battery. The tide was thus against the E. C. Scranton. The John Hart, as she lay, headed to the south, her stem being about even with the south end of the pier, and the E. C. Scranton and her tug headed to the eastward. When the E. C. Scranton and her tug came to a point about opposite to the slip, between the east side of pier No. 35 and the west side of pier No. 36 (pier No. 36 being the next pier to the westward of pier No. 35), the libellant, who was the master of the John Hart, saw that the E. C. Scranton was making for a berth which was vacant along the west side of pier No. 36, there being no vessel then either at the west side of pier No. 36, or at the outer end, which was the south end of that pier. The way was thus clear for the E. C. Scranton to take a berth at the west side of pier No. 36. But the master of the John Hart saw that, with the tide running as strongly ebb as it was running at that place, the E. C. Scranton, with a tug on her starboard side, would, in attempting to come into the slip head on (which was her movement), and put her starboard side lengthwise against the west side of pier No. 36 (which was what she must do to reach the berth she was aiming for), probably drift down against, and come into collision with, the John Hart. The master of the John Hart, therefore, hailed the pilot of the E. C. Scranton, and warned him that there was danger of his striking the John Hart. The pilot paid no attention to the warning, but persisted in bringing his vessel into the slip in the manner referred to. The result was, that the E. C. Scranton came into collision with the John Hart and damaged her seriously. The tug, being on the starboard side of the E. C. Scranton, was obliged to cast loose, in order to enable the ship to come up to pier No. 36, and to prevent being herself jammed between the ship and the pier. The result was, that the E. C. Scranton, being deprived of all adequate motive power that could control her movements, drifted into a position angling across the slip with her stem to the northeast, and

near to pier No. 36, her port bow resting against a sunken crib at the northeast corner of the slip, and her stern, on the port side, crushing against the John Hart. For the damage caused to the John Hart by this collision, the E. C. Scranton is clearly responsible. She was navigated with great carelessness. With the tide such as it was, it was very reckless in her to attempt to go into the slip head on with the tug on her starboard side. If the tug had been on her port side, probably the collision would not have occurred, for then the tug would not have been obliged to cast loose from her before she was safely moored to pier No. 36, and would have been able to keep her up to that pier and away from the John Hart. Testimony was put in to show that it was safe to berth vessels at the west side of pier No. 36, at such a stage of an ebb tide as that which prevailed at the time of this transaction, but this testimony only goes to show the carelessness in navigating the E. C. Scranton. If it was not safe to berth a vessel there at that time, then it was negligence to attempt to do so. If it was safe to do so, provided the vessel was properly navigated and managed, the fact that it was not safely done in this case, shows that the vessel was not properly navigated or managed. There was nothing wrong in the attempt of the E. C. Scranton to take the berth in question, provided she did so in a proper way and at a proper time, for she was authorized to do so by the harbor master of the port, who was the proper authority in the premises. She is responsible, however, for her navigation, in attempting to take the berth.

As to the Emerald Isle, it appears that, after this collision between the E. C. Scranton and the John Hart, the Emerald Isle, having been assigned by the same harbor master to the same berth, at the west side of pier No. 36, to which the E. C. Scranton was assigned, came to take the berth. The error of the harbor master in assigning two vessels to the same berth appears to have been one of forgetfulness, in the hurry and press of business, and neither vessel was guilty of any illegal act, in the mere abstract attempt to take the berth. The Emerald Isle had two steam tugs lashed to her sides, one on her starboard side and one on her port side. She approached from the southward from across the East river, heading directly to the northward, in a line parallel with the west side of pier No. 36, and sufficiently to the westward of it to enable her to make the berth properly. Her navigation appears to have been in all respects proper. As she approached, the berth was clear of obstruction. The E. C. Scranton was lying in the angling position before described, with her starboard bow ten or twelve feet away from pier No. 36, and her stern, on her port side, against the John Hart. A line was got out from the Emerald Isle and made fast to pier No. 36, and then

her starboard tug was cast off, leaving her port tug still fast to her, and in a position, her starboard tug being out of the way, to crowd her up to pier No. 36, which was done, her port tug not being cast loose till the ship was moored close to the pier. I am entirely satisfied that the Emerald Isle never came in contact with the John Hart at all. The master of the John Hart is mistaken in his testimony on that subject. The occurrence took place twelve years ago, and it is very much to be regretted that so long a time has been allowed to elapse before the trial of the cause, for it appears that many disinterested witnesses are either dead or beyond reach. There is one fact, however, which is conclusive to my mind, to show that the stern of the Emerald Isle could not have come into collision with the John Hart in the manner testified to by the libellant. It is in proof that the stern of the port tug of the Emerald Isle projected aft beyond the stern of the Emerald Isle. This being so, it would have been that port tug that would have come against the John Hart, and that tug would have been crushed between the John Hart and the ship. But there is not a particle of evidence that the John Hart was touched by that tug, or that that tug was injured. It may very well be that the flag staff of the John Hart, as she went out of the slip after the collision, came into contact with some projecting part of the Emerald Isle and was broken, but, if so, that was not because of any fault on the part of the Emerald Isle.

It is sought to make the Emerald Isle responsible for a part or the whole of the damage to the John Hart, on the ground that, in coming into her berth she willfully ran against and parted a taut line which it is claimed the E. C. Scranton had at the time got out from her quarter to pier No. 36, and that the effect of the parting of this line was to throw the E. C. Scranton anew against the John Hart, she having at the time, as is alleged, been warped by means of the line to a point some distance to the eastward of the John Hart. But I do not think it is made out that the Emerald Isle parted any such line, nor, if she did break or overrun any line which ran from the E. C. Scranton to pier No. 36, is it satisfactorily shown that her doing so caused the E. C. Scranton to inflict on the John Hart any more injury than she would otherwise have inflicted. And, although, as the Emerald Isle came up alongside of pier No. 36, her port bow came in contact with the starboard bow of the E. C. Scranton, yet, from the position in which the E. C. Scranton lay with her port bow crowded against the corner of the sunken crib, and the place where the Emerald Isle came in contact with her, the Emerald Isle could not, by thus coming in contact with her, have caused her to inflict any additional injury on the John Hart.

The effort on the trial, on the part of each of the two vessels sued, was to free herself

from blame and to throw the blame on the other, and each also contended, that, even if she herself was wholly to blame, yet no recovery could be had in this suit unless a joint fault was proved in respect to the two vessels, and then only as to injuries which resulted to the John Hart from matters in respect to which the two vessels were jointly in fault. In other words, the E. C. Scranton contends, that if it appears that she was wholly to blame, no recovery can be had against her in this suit, for the reason that the libel sues the vessels jointly, and is not sustained unless it is shown that the vessels were jointly concerned in every act in respect to which the court awards a recovery. In this case I hold the E. C. Scranton to have been in fault, and the Emerald Isle to have been free from fault; and the case of Sturgis v. Boyer, 24 How. [65 U. S.] 110, is an authority for allowing a recovery against the E. C. Scranton and dismissing the libel as against the Emerald Isle.

The libel must be dismissed as against the Emerald Isle, with costs; and there must be a reference to a commissioner, as respects the E. C. Scranton, to ascertain and report the damages caused by the collision, and for such damages, with the costs of the suit, there must be a decree against the E. C. Scranton.